IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL K. A.,

                Plaintiff,

     v.                             Civil Action No.
                                  6:20-CV-1302 (LEK/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER W.          PETER W. ANTONOWICZ, ESQ.
ANTONOWICZ
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.     MOLLY CARTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the

relevant times and, accordingly, is ineligible for the disability insurance

("DIB") and supplemental security income ("SSI") benefits for which he has

applied.  The matter has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District

of New York Local Rule 72.3.  For the reasons set forth below, I

recommend a finding that the Commissioner's determination did not result

from the application of proper legal principles and is not supported by

substantial evidence.

I.    BACKGROUND

       Plaintiff was born in October of 1965, and is currently fifty-six years of

age.  He was fifty-one years old when he filed his application in May of

2017, and fifty-four years of age at the date of the most recent final

decision of the Commissioner.  Plaintiff measures five feet and five inches

in height, and weighed approximately one hundred and thirty-five pounds

during the relevant period.  Plaintiff currently lives in an apartment with his

brother in Rome, New York.

       Plaintiff reports having graduated from high school with involvement

in special education classes while he was attending school.  He has

previously worked primarily in janitorial positions.

Plaintiff alleges that he suffers from physical impairments including an inability to use his left (non-dominant) hand, bilateral carpal tunnel syndrome, chronic low back pain, herniated and bulging discs in his spine with a history of surgery on his cervical spine, and arthritis in his right shoulder.  As is relevant to his applications, plaintiff has treated for his impairments with Dr. Glady Jacob at Rome Neurology, Dr. Vivienne Taylor at Rome Medical Group, MVHS Adirondack Neurosurgical Office, and Dr. Apparao Poonati.  It is also noted that plaintiff has or had issues with alcohol addiction for which he has received treatment.

Plaintiff alleges that he mainly has difficulties with being unable to use his left arm and hand due to a cervical spine impairment that damaged the nerves of his arm, and that those nerve issues were not remedied or improved after spinal surgery performed in May 2017.  His dominant right hand is mostly unaffected but he is starting to also develop symptoms in that hand.  Plaintiff reports that he is unable to hold a cup or a pen in his left hand or to button or zip things, and he has difficulty doing chores like washing dishes, preparing meals, doing housework, managing groceries, or opening packages.  He can prepare some simple meals, do some vacuuming with his right hand, and do small loads of laundry, but his cousin

cleans the house for him.  He wears a brace on his left arm and can drive

and shop, although he needs help loading and unloading items when he

does. Plaintiff's activities include doing word search books with his right

hand while the book rests on a table, and watching people from the senior

center play cards, although he does not play with them because he cannot

grasp or hold the cards with his left hand.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI

of the Social Security Act on May 18, 2017.  After a hearing, administrative

law judge ("ALJ") Elizabeth W. Koennecke issued a fully favorable decision

on April 25, 2019, finding that plaintiff had been disabled since January 3,

2017.  The Social Security Appeals Council ("Appeals Council") reviewed

the ALJ's decision *sua sponte* and issued a decision remanding the matter

for further proceedings based on a number of perceived errors, including

(1) that the ALJ's findings that plaintiff was limited to only "unilateral"

handling and fingering and could rarely engage in overhead reaching was

not sufficiently specific to facilitate further consideration of plaintiff's

functioning at steps four and five of the sequential evaluation; (2) the

evidence of record did not substantially support the ALJ's finding that

4

plaintiff would be limited in reaching with both arms; (3) the ALJ did not explain the restriction that plaintiff could never climb and the evidence did not support such a limitation; (4) the ALJ erred in relying on the Medical-Vocational Guidelines ("Grids") and Social Security Rulings at step five of the analysis rather than eliciting testimony from a vocational expert; and (5) in finding plaintiff disabled, the ALJ did not address whether plaintiff's alcohol or drug abuse was a contributing factor to his disability.  In its remand order, the Appeals Council instructed the ALJ to (1) obtain additional evidence to compete the administrative record; (2) obtain evidence from a medical expert with a specialty in orthopedics; (3) further consider the RFC; (4) with the assistance of a vocational expert, further consider whether plaintiff can perform his past relevant and/or other work; and (5) if she again found plaintiff disabled, determine whether alcoholism is a contributing factor to his disability.

ALJ Koennecke conducted a subsequent hearing on February 3, 2020, to obtain the testimony of both a medical expert and a vocational expert.  Following that hearing, on February 18, 2020, ALJ Koennecke issued a decision finding that plaintiff was not disabled.  That opinion became a final determination of the agency on September 24, 2020, when the Appeals Council denied plaintiff's request for review of the ALJ's

decision.

      B.    <u>The ALJ's Decision</u>

In her decision, ALJ Koennecke applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff did not engage in substantial gainful activity during the relevant period.  The ALJ next found at step two that plaintiff suffers from a single severe impairment that imposes more than minimal limitations on his ability to perform basic work functions, which is degenerative disc disease of the cervical spine status post repair with residuals affecting plaintiff's non-dominant upper extremity.

At step three, ALJ Koennecke examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed, presumptively disabling conditions set forth in those regulations, specifically considering Listings 1.02 and 1.04.

ALJ Koennecke next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a reduced range of light work,[1] as defined by the controlling

---

[1]      By regulation, light work is defined as follows:

regulations, with the following exceptions:

> with the dominant right upper extremity, can lift up to 20 pounds, no restrictions as to frequency; on the non-dominant side, can lift up to 10 pounds occasionally; on the non-dominant side, can reach in all directions occasionally; there are no reaching restrictions on the dominant side; bilaterally can reach overhead only occasionally; can handle and fine-finger on the left non-dominant side rarely, no restriction on the dominant side except for bilaterally no very fine fingering; stand or walk four hours in an eight-hour day, not more than one hour at a time; sit for six hours, no more than two hours at a time; never climb ladders, scaffolds, or ropes; never work at unprotected heights; never balance, kneel, or crawl; frequently climb stairs and ramps; frequently use foot pedals bilaterally; frequently stoop and crouch; and should avoid concentrated exposure to vibration.

ALJ Koennecke went on at step four to conclude that plaintiff is

unable to perform the demands of his past relevant work.  Proceeding to

--------------------

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

step five, the ALJ elicited the testimony of a vocational expert regarding how plaintiff's limitations would impact the occupations that he could perform with the range of light work specified above and concluded, based on the vocational expert's testimony, that plaintiff remains able to perform available work existing in significant numbers in the national economy, citing as representative examples the positions of inspector and sorter. Based upon these findings, ALJ Koennecke determined that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on October 20, 2020.[2]  In support of his challenge to the ALJ's determination, plaintiff argues the ALJ's finding is not supported by substantial evidence because (1) the ALJ failed to explain how she reconciled the limitations in the RFC that plaintiff could lift ten pounds occasionally with his left upper extremity and that plaintiff could only rarely handle or finger with his left hand because, plaintiff asserts, an individual could not lift an object if he is unable to grip that object as the relevant terms are defined by the regulations; (2) the ALJ also failed to

---

[2]      This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

explain how she reconciled the ability to lift up to twenty pounds with no frequency restriction with his right upper extremity with the limitation to standing and walking for only four hours in an eight-hour workday, again arguing that the definitions of these terms provided in the regulations show that there is an inconsistency between these findings; (3) the ALJ's finding at step five is not supported by substantial evidence because the job titles the vocational expert provided for the jobs on which the ALJ bases her finding do not match the Dictionary of Occupational Titles ("DOT") numbers that the vocational expert provided for those jobs, and the actual description of those jobs in the DOT appear to require greater ability to handle than plaintiff possesses; and (4) alternatively, the step five finding is unsupported by substantial evidence because the jobs identified, even if found to be valid and reliable, do not exist in significant numbers in the national economy to meet the Acting Commissioner's burden at step five. Dkt. No. 15.

Oral argument was conducted in this matter, by telephone, on April 20, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.*

*Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

      B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

12

assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.     Analysis

1.     The ALJ's Assessment of Plaintiff's Subjective Reports Regarding the Intensity, Persistence, and Limiting Effect of his Symptoms

Although not raised by plaintiff, I find it prudent to first discuss the ALJ's apparent failure to provide a sufficient assessment of the plaintiff's subjective reports regarding his symptoms.

Under the two-step review protocol applicable in social security cases

for assessing a claimant's subjective reports of symptoms, an ALJ must

first determine whether the individual has a medically determinable

impairment that could reasonably be expected to produce the alleged

symptoms, and, if so, then the ALJ must then evaluate the intensity and

persistence of those symptoms and determine the extent to which those

symptoms limit the claimant's ability to perform work-related activities.

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-8.  When

addressing this second prong, an ALJ must consider the objective medical

evidence and other evidence in the record, including statements by the

claimant and reports from both medical and non-medical sources, and is

required to evaluate the intensity, persistence, and limiting effects of the

claimant's symptoms, considering relevant factors which include evidence

regarding (1) daily activities, (2) the location, duration, frequency, and

intensity of pain or other symptoms, (3) factors that precipitate or aggravate

the claimant's symptoms, (4) the type, dosage, effectiveness, and side

effects of medication, (5) any treatment other than medication that is used

to relieve the symptoms, (6) other measures to obtain relief of symptoms,

and (7) any other relevant factors.  *Id.*

　　　If the ALJ finds that a claimant's subjective testimony should be

rejected, he or she must explicitly state the basis for doing so with sufficient

particularity to enable a reviewing court to determine whether those reasons for disbelief are legitimate and whether the determination is supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, provided that it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision"). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on judicial review. *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

Although the ALJ included a boilerplate recitation of the two-step standard in her decision and alluded to SSR 16-3p, it is not at all apparent that she made any good-faith effort to actually apply the obligatory analysis in this case. After summarizing the objective medical evidence and

recounting some of plaintiff's subjective reports, the ALJ provided the

following analysis:

> All of the specific symptomology alleged by the
> claimant in both the evidence of record and at the
> hearing, as well as all of the specific functional
> limitations alleged by the claimant in both the
> evidence of record and at the hearings, have been
> duly considered by the undersigned in accordance
> with Social Security Ruling 16-3p.  The undersigned
> also fully considered the claimant's subjective
> complaints of pain, psychiatric symptomatology, and
> cognitive symptomatology, together with any
> resulting functional limitations.

> No matter how sincere, however, statements by
> interested parties cannot overcome the medical
> evidence of record (SSR 16-3p).  Furthermore, an
> individual's statements about his or her symptoms
> alone are insufficient to establish that an individual is
> disabled (SSR 16-3p).  In formulating the residual
> functional capacity for the claimant, moreover, the
> undersigned has accounted for any functional
> deficits of the claimant by limiting him to exertional
> work with manipulative, postural, and environmental
> restrictions.

Administrative Transcript ("AT") at 25-26.[3]

This is the only portion of the decision in which the ALJ addresses the

plaintiff's subjective reports, and yet, despite incanting in a conclusory

fashion that she appropriately considered plaintiff's subjective reports, there

---

[3]    The Administrative Transcript is found at Dkt. No. 12, and will be cited throughout
this decision as "AT __."

is no indication of what her conclusion was, much less the specific reasons underlying that conclusion.  There is no discussion suggesting that the ALJ considered any of the relevant factors identified in Social Security Ruling ("SSR") 16-3p.  The ALJ did not even make any clear finding as to whether the subjective reports were or were not consistent with the evidence as a general matter.

Further, although the ALJ discussed the objective medical evidence and recounted plaintiff's reports activities of daily living to some extent, there is nothing in those abstract recitations of evidence that would provide a rationale to support the ALJ's implicit rejection of the majority of plaintiff's subjective reports related to his ability to use his left hand in particular. Indeed, the cited medical evidence shows that plaintiff had ongoing observed limitations related to his left hand, including references to a claw hand, inability to open or close that hand fully, left wrist drop, and even "non-functional motor strength" in the left extremity, and the cited reported activities suggest that plaintiff cannot use his left hand much, if at all, and that he is severely limited by that inability.  The only evidence that would support the ALJ's rejection of certain subjective reports related to plaintiff's left hand is her stated reliance on various opinion evidence, particularly that of medical expert Dr. Arthur Lorber.  However, statements from medical

sources are only one aspect of the evidence that an ALJ is required to consider when assessing a plaintiff's subjective reports and symptoms, and the other evidence in the record that also requires consideration, as was already discussed, seems to contradict that opinion evidence in relevant respects. SSR 16-3p. There is simply nothing in the ALJ's decision as a whole that explains why she implicitly found that some of plaintiff's subjective reports, particularly related to the functionality of his left hand, should not have been fully accounted for, nor am I convinced that the ALJ's RFC finding sufficiently accounts for the full extent of limitations that plaintiff reported, again, particularly regarding his left hand. Without any indication of how the ALJ assessed the evidence and the bases for her finding regarding plaintiff's subjective complaints, meaningful review of that finding cannot be conducted. *See Holman v. Comm'r of Soc. Sec.*, 19-CV-4393, 2021 WL 857333, at *2 (S.D.N.Y. Mar. 8, 2021) (adopting report and recommendation in which remand was recommended based on the ALJ's use of "boilerplate language that does not satisfy the requirement that the ALJ take Plaintiff's subjective complaints into account"); *see also Griffin v. Colvin*, 12-CV-0976, 2014 WL 296854, at *11 (N.D.N.Y. Jan. 27, 2014) (Hines, M.J.; Sharpe, C.J.) (acknowledging that a credibility assessment is defective and not susceptible to meaningful review where the ALJ uses

"meaningless and suspicious boilerplate" without any further explanation or articulation of the finding regarding subjective reports, but finding no error in that case because the ALJ did provide a detailed explanation and articulated how she considered the relevant regulatory factors).

Based on the foregoing, I recommend that this matter be remanded for further proceedings based on the ALJ's failure to appropriately apply SSR 16-3p and document her findings related to her assessment of plaintiff's subjective reports of symptoms, which error prevents meaningful review.

### 2.   The ALJ's Reliance on the Medical Expert's Opinion

Although also not raised in plaintiff's brief, I have chosen to examine the ALJ's finding that the opinion of Dr. Arthur Lorber is the most persuasive of the medical opinion evidence in the record.  That opinion, provided during the most recent hearing in this matter, almost exactly mirrors the ALJ's RFC finding, such that she essentially adopted it wholesale as the definitive statement of plaintiff's functional abilities. AS a result of the medical expert's testimony, the ALJ found that all the other opinions in the record were of less persuasive value when assessing plaintiff's RFC.  AT 27.  Because the ALJ relied so heavily on Dr. Lorber's opinion, the reasons she provided to support that reliance warrant closer

examination.

The ALJ found that Dr. Lorber's opinion was the most persuasive of all of the opinions in the record based on the fact (1) he is an impartial medical expert in orthopedics; (2) he reviewed the record; and (3) the Appeals Council ordered that his opinion be obtained upon remand.  AT 26. The ALJ also recounted the testimony that ALJ Lorber provided in support of his opinion.  AT 26-27.

Because plaintiff filed his applications for benefits on May 18, 2017, this case is subject to the amended regulations regarding the consideration of medical opinion evidence.  Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he

20

or she considered the supportability[4] and consistency[5] of those opinions.

20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to –

explain how he or she considered the other relevant enumerated factors

related to the source's relationship with the claimant, including the length of

any treatment relationship, the frequency of examinations by the source

and the purpose and extent of the treatment relationship, whether the

source had an examining relationship with the claimant, whether the source

specializes in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

　　ALJ Koennecke did appear to assess the factor of supportability in

that she included a lengthy recitation of the testimony Dr. Lorber provided

in response to questions by plaintiff's representative at the hearing.  AT 26-

27.  However, particularly as to the ALJ's adoption of Dr. Lorber's finding

that plaintiff can lift ten pounds occasionally with his left upper extremity, it

---

[4]　　On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[5]　　On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

is not clear that the ALJ assessed how that testimony supports that finding.

Much of Dr. Lorber's explanation at the hearing was to explain why the

evidence did not support any restrictions in plaintiff's right upper extremity.

AT 44-49.  Regarding the left upper extremity, Dr. Lorber testified only that

"[t]here is no doubt of the persistent motor disorganization in his left hand.

He has a claw hand if you know what that means. His fingers are curled up

like a claw and he can't fully extend them and can't properly use his left

hand."  AT 45.  The ALJ noted this testimony, but did not explain how it

supports Dr. Lorber's finding that plaintiff remains able to lift ten pounds

occasionally with his left upper extremity.

Even if the ALJ's discussion sufficiently showed that she considered

the factor of supportability by reciting the full explanation Dr. Lorber

provided for his opinion, any discussion of the factor of consistency is

notably absent from the ALJ's decision.  Indeed, the ALJ nowhere indicates

whether she found Dr. Lorber's opinion to be consistent with the other

evidence in the record, merely noting that he considered that evidence

when formulating his opinion.  Her notation that Dr. Lorber reviewed the

medical evidence does not form the basis for even an inference that she

found his opinion to be consistent with such evidence.  While she does

provide a recitation of the objective medical evidence, it is not clear how the

ALJ compared that evidence to Dr. Lorber's opinion.  The ALJ's recitation acknowledges pertinent findings particularly related to plaintiff's left hand, including observations of left "wrist drop"[6], decreased left hand grip strength, left arm weakness, limited ability to operate his hand, "non-functioning motor strength" in his left upper extremity, and that plaintiff's hand was in a claw-like position.  AT 23-24.  In addition to the documented problems with his left hand, plaintiff was also observed on multiple examination as having decreased 3/5 strength in his left elbow extensors with increased muscle tone in his left upper extremity.  *See, e.g.*, AT 1063-64, 1118, 1157, 1160.  Because the medical record documents that plaintiff continued to experience a range of issues with the use of not only his left hand, but also some impacts on his left arm in general, the ALJ's failure to provide any explanation as to how she assessed the consistency of Dr. Lorber's opinion with this evidence not only violates the regulations, but also renders it impossible to meaningfully review whether her heavy reliance on Dr. Lorber's opinion, particularly his finding that plaintiff could lift ten pounds occasionally with his left upper extremity, is supported by

---

[6]    Wrist drop has been described as when, because of compromise in nerve functioning, "the hand hangs flaccidly in a position of flexion when the patient attempts to bring the arm to a horizontal position." *See National Center for Biotechnology Information*, https://www.ncbi.nlm.nih.gov/books/NBK532993/ (last visited Mar. 17, 2022).

substantial evidence.  *See Nicole L. v. Kijakazi*, 20-CV-1576, 2022 WL 160274, at *8-9 (N.D.N.Y. Jan. 18, 2022) (Mordue, J.) (finding error where the ALJ "did not provide any explicit analysis of the factor of supportability" as to one opinion); *Carmen M. v. Comm'r of Soc. Sec.*, 20-CV-6532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) (noting that "[a]n ALJ is specifically required to explain how he or she considered the supportability and consistency factors for a medical opinion," and that, "[i]f the ALJ failed adequately to explain the supportability and consistency factors, or bases her explanation upon a misreading of the record, remand is required").

Lastly, reviewing the ALJ's decision as a whole, I am not convinced that the ALJ otherwise appropriately performed her duties in this case when relying on Dr. Lorber's opinion.  The ALJ states twice that she found Dr. Lorber's opinion to be the most persuasive in part because the Appeals Council ordered her to obtain his testimony.  AT 26-27.  However, nothing in the Appeals Council's remand order required the ALJ to adopt the medical expert's opinion; instead, it only directed her to obtain an opinion from a medical expert.  AT 113.  It is notable that, in her first ALJ decision, which was vacated by the Appeals Council, ALJ Koennecke concluded that plaintiff was limited to lifting and carrying only five pounds with his left upper extremity.  AT 110.  In discussing the reasons for remand, the

Appeals Council did not appear to find any fault with that specific limitation regarding lifting and carrying with the left upper extremity.  AT 111-12. Rather, as was discussed previously, the Appeals Council found, in relevant part, that the ALJ's conclusions that plaintiff was limited to only "unilateral" handling and fingering and could rarely engage in overhead reaching were not sufficiently specific to facilitate further consideration of plaintiff's functioning at steps four and five of the sequential evaluation, and that the evidence of record did not substantially support the ALJ's finding that plaintiff would be limited in reaching with both arms. *Id.*  The vocational expert at the most recent hearing testified that, if an individual is limited to lifting only five pounds with his or her left upper extremity, it would cause the individual to be able to perform only sedentary work, and the two positions identified would no longer be available.  AT 52-53.  The only apparent basis for the change from a five pound restriction to a ten pound restriction is Dr. Lorber's opinion.  The ALJ's failure to appropriately explain how she applied the regulatory factors for weighing opinion evidence is therefore compounded by the fact that she appears to have relied on his opinion in large part simply because the Appeals Council ordered her to obtain it, without actually considering what findings the Appeals Council found to be deficient or unsupported in her first decision and whether every

aspect of Dr. Lorber's opinion was consistent with the evidence as a whole. Because a limitation to lifting and carrying only five pounds with the left upper extremity is both supported by other opinion evidence[7], particularly the opinions from Dr. Glady Jacobs and the January 2020 opinion of Dr. Vivienne Taylor, and would appear to render plaintiff disabled based on the vocational expert's testimony, the ALJ's failures here materially impact the outcome of this case and cannot be considered harmless.

Based on the foregoing, I recommend that this matter be remanded for further consideration based on the ALJ's failure to appropriately assess Dr. Lorber's opinion consistent with the applicable regulations.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, and that the matter be remanded to the

---

[7]    I note that, although the ALJ provided specific reasons for finding the other opinions less persuasive, she also stated that, "[a]s a result of the Appeals Council order for medical expert testimony, the undersigned now finds that all other opinions of record have less persuasive value," suggesting that her assessment of those opinions was tainted by her heavy reliance on Dr. Lorber's opinion.  AT 27.  It is therefore not clear whether the assessment of the persuasiveness of those opinions would change when an ALJ conducts a more proper and full assessment of Dr. Lorber's opinion on remand.

Commissioner for further consideration.  Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 16) be DENIED, and this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    April 25, 2022
          Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge